**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| SUSANNE McNEILL,<br><br>    Plaintiff,<br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social<br>Security Administration,<br><br>    Defendant. | No. EDCV 08-257 CW<br><br>DECISION AND ORDER |

  The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge.  Plaintiff seeks review of the denial of disability benefits.  The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

## I. BACKGROUND

  Plaintiff Susanne McNeill was born on November 2, 1955, and was fifty-one years old at the time of her administrative hearing. [Administrative Record ("AR") 63, 232.]  She has at least a high school education and past relevant work experience as a security

guard. [AR 17.] Plaintiff alleges disability on the basis of lower lumbar damage/cervical sprain. [AR 50.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on February 25, 2008, and filed on February 28, 2008. On September 29, 2008, defendant filed an answer and plaintiff's Administrative Record ("AR"). On August 10, 2009, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income ("SSI") and disability insurance benefits ("DIB") on August 1, 2005, alleging disability since March 13, 2005. [AR 10.] After the applications were denied initially and on reconsideration, plaintiff requested an administrative hearing, which was held on October 3, 2007, before Administrative Law Judge ("ALJ") John W. Belcher. [AR 232.] Plaintiff appeared with counsel, and testimony was taken from plaintiff, medical expert Samuel Landau and vocational expert David Rinehart. [AR 233.] The ALJ denied benefits in a decision issued on October 19, 2007. [AR 10-19.] When the Appeals Council denied review on January 28, 2008, the ALJ's decision became the Commissioner's final decision. [AR 3.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not

supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

### V.  DISCUSSION

**A.  THE FIVE-STEP EVALUATION**

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial

```
          gainful activity?  If so, the claimant is found not
          disabled.  If not, proceed to step two.
               Step two: Does the claimant have a "severe" impairment?
          If so, proceed to step three.  If not, then a finding of not
          disabled is appropriate.
               Step three: Does the claimant's impairment or
          combination of impairments meet or equal an impairment
          listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
          so, the claimant is automatically determined disabled.  If
          not, proceed to step four.
               Step four: Is the claimant capable of performing his
          past work?  If so, the claimant is not disabled.  If not,
          proceed to step five.
               Step five: Does the claimant have the residual
          functional capacity to perform any other work?  If so, the
          claimant is not disabled.  If not, the claimant is disabled.
```

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (step one); that plaintiff had "severe" impairments, namely mild degenerative disc disease of the cervical spine and a chronic right ankle sprain (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 12, 14.] The ALJ determined that Plaintiff had an RFC for a narrowed range of light work, including the ability to lift ten pounds frequently and twenty pounds occasionally; stand and/or walk for two hours and sit for six hours in an eight-hour workday; no balancing or climbing ladders, ropes or scaffolds; occasionally bend, stoop and move the neck; no extreme ranges of motion of the neck; hold the neck in a fixed position for fifteen to thirty minutes; and no working at unprotected heights or around hazardous or fast-paced machinery. [AR 14.]  Plaintiff's RFC precluded her from returning to her past relevant work as a security guard (step four). [AR 17.]  The vocational expert testified that a person with plaintiff's RFC could perform work existing in significant numbers in the national economy, such as assembler of small products, cashier II, or fund raiser II (step five). [AR 18.]  Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [Id.]

---

n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation sets out the following disputed issues:

1. Whether the ALJ properly considered the opinion of the treating chiropractor;
2. Whether the ALJ properly considered Plaintiff's testimony regarding pain;
3. Whether the ALJ properly considered the severity of Plaintiff's borderline intellectual functioning; and
4. Whether the ALJ posed a complete hypothetical question to the vocational expert.

[JS 2-3.]

**D.   ISSUES ONE AND FOUR: CHIROPRACTIC OPINION**

On March 13, 2005, Plaintiff was involved in an automobile accident and complained of pain in her neck, right shoulder, right shoulder blade, between the shoulders, the right side of the lower back, and close to the right hip. [AR 155.]  Plaintiff began twice-weekly physical therapy on March 26, 2005. [Id.]  On April 5, 2005, upon examination, Dr. Roy John Robinson made a diagnosis of "More than 50% improved on all following conditions, which were originally considered as mild: mild sprain of cervical spine, strain of the bilateral shoulder blades and right hip sprain." [AR 155.]

On June 28, 2005, Gerardo Guevara, a chiropractor, filled out a Work Status Report stating, among other things, that Plaintiff had a "cervical/lumbar sprain/strain" and that she was unable to sit, stand or walk for longer than fifteen to twenty minutes. [AR 152.]  Mr. Guevara concluded, however, that Plaintiff could perform her regular or customary work by August 9, 2005. [Id.]  The record contains

6

subsequent evaluations of physical therapy received by Plaintiff that end on December 21, 2005. [AR 136-37.]

Plaintiff contends that the ALJ did not properly take into account Mr. Guevara's opinion of Plaintiff's functional limitations, specifically, his opinion that Plaintiff could not sit, stand or walk for longer than fifteen to twenty minutes. [JS 3-4.] Plaintiff also contends that this limitation should have been included in the hypothetical question asked to the vocational expert at the hearing. [JS 15.]

Plaintiff's contentions lack merit because Mr. Guevara's cited opinion as to Plaintiff's limited ability to sit, stand and walk was not significant or probative to the ALJ's RFC finding. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ comprehensively analyzed Plaintiff's physical therapy records on the whole, of which Mr. Guevara's one-time evaluation, which was conducted during the initial stages of Plaintiff's therapy and does not reasonably permit an inference of disability, was only a minor part and in conflict with substantial evidence in the record. Id. (ALJ's failure to reference lay opinion was harmless when opinion conflicted with available medical evidence and substantial evidence supported Commissioner's decision). Accordingly, Issues One and Four do not warrant reversal of the Commissioner's decision.

**E.   ISSUE TWO: PLAINTIFF'S TESTIMONY**

In Issue Two, Plaintiff contends that the ALJ's credibility evaluation of Plaintiff's subjective pain testimony was not supported by clear and convincing reasons. [JS 7-9.] At the hearing, Plaintiff testified that following her automobile accident in March 2005, she had "striking pain" in her right foot, lower back, neck, and "just my

whole right side, basically." [AR 244- 46.] Plaintiff also testified to loss of balance and that she could not sit or stand for more than thirty minutes at a time or lift more than ten pounds. [AR 247, 259.]

In the administrative decision, the ALJ recounted the above testimony. [AR 12-13.] The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely credible." [AR 16.] The ALJ's cited reasons for this finding, based on the record, were that Plaintiff had a prior arrest history, including an arrest for "writing bad checks"; she gave insufficient effort at her psychological examination, including an invalid test score indicating over reporting of symptoms[2]; there was lack of supporting objective medical findings, such as no evidence of fracture, malalignment or foraminal degenerative spondylosis; indications of improvement through physical therapy; and there was lack of significant limitations in Plaintiff's daily activities, such as shopping, making meals, dressing, walking and driving. [AR 16.]

Upon review of the whole record, it is evident that the ALJ's credibility determination is supported by "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008)("We have consistently held that where the record includes objective medical evidence establishing that the claimant suffers from

---

[2] At a psychological evaluation conducted on May 15, 2007, Dr. Ahmad R. Riahinejad observed that Plaintiff's "overall attitude was characterized by what appeared to be slightly insufficient effort" and that Plaintiff's performance on the Minnesota Multiphasic Personality Inventory resulted in an "invalid" profile indicating "over-reporting psychopathology in an effort to appear worse than a person actually is." [AR 184, 186.]

8

an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"). The reasons provided by the ALJ to find Plaintiff's complaints not entirely credible were supported by substantial evidence under this standard. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008)("The ALJ may rely on ordinary techniques of credibility evaluation"); Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005)("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Tonapetyan, 242 F.3d at 1148 (finding credibility determination supported by substantial evidence where claimant's gave "poor effort" at consultative examination); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)(finding credibility determination supported by substantial evidence where claimant's participation in daily activities was consistent with ability to work). Accordingly, this issue does not warrant reversal of the Commissioner's decision.

**F.   ISSUE THREE: BORDERLINE INTELLECTUAL ACTIVITY**

During her psychological evaluation, Plaintiff was tested on the Wechsler Adult Intelligence Scale (3rd Ed.) and received the following scores: Verbal IQ of 80, Performance IQ of 78, and Full Scale IQ of 77. [AR 185-86.] Dr. Riahinejad made the following conclusion:

> These scores place her within the upper end of borderline range of intellectual ability, and appear to be slightly an underestimate. Her Verbal IQ falls within the low average range, which appears to be an accurate assessment. Her Performance IQ is lower because of her overall slowness.

[AR 186.]

In the administrative decision, the ALJ noted Plaintiff's scores and Dr. Riahinejad's conclusion. [AR 13.] At step two of the five-step evaluation, however, the ALJ stated that "[t]here is no basis for finding that the claimant has a 'severe' mental impairment or for the imposition of any mental limitations that would preclude the performance of work within the assessed residual functional capacity." [AR 13.] Plaintiff contends that this finding was not supported by substantial evidence, citing two Eighth Circuit cases for the proposition that borderline intellectual functioning is a "severe" impairment at step two of the five-step evaluation. [JS 11-12, citing Hunt v. Massanari, 250 F.3d 622, 625-26 (8th Cir. 2001), and Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997).]

However, review of the record indicates that the ALJ's finding that Plaintiff does not have a severe mental impairment is supported by substantial evidence. The caselaw cited by Plaintiff is distinguishable in this case, based on Dr. Riahinejad's opinion that Plaintiff's test scores were slightly an underestimate of her intellectual capacity, as well as his observation that Plaintiff did not make a full effort during the evaluation. Moreover, the record contains no evidence that deficits in Plaintiff's intellectual functioning significantly limited her from performing basic work activities, including the non-skilled jobs cited by the Commissioner at step five of the five-step evaluation. See Lor v. Astrue, No. EDCV 05-770 FFM, 2008 WL 4289786 at *3 (C.D. Cal. Sept. 16, 2008) (distinguishing Hunt where record contained no evidence to support inference of severe impairment from IQ score of 79); cf. Tagger v. Astrue, 536 F. Supp. 2d 1170, 1179-80 (C.D. Cal. Jan. 24, 2008)(finding claimant had severe mental impairment when record

indicated claimant's test results signified borderline intellectual functioning on three occasions over six-year period). Accordingly, this issue does not merit reversal of the Commissioner's decision.

## V.   ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.
2. This action is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED:   September 15, 2009

```
            _____/S/_____
                    CARLA M. WOEHRLE
                United States Magistrate Judge
```